# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT
# HARTFORD DIVISION

| | |
|---|---|
| IN RE: ) | CASE No.        22-20337 (JJT) |
| ) | |
| BRIAN P. GATES, ) | CHAPTER        11 |
|     Debtor. ) | |
| ) | |
| CHELSEA GROTON BANK, ) | |
|     Movant, ) | |
| ) | |
| V. ) | RE: ECF Nos.        13, 24, 35 |
| ) | |
| BRIAN P. GATES, ) | |
|     Respondent. ) | |

## RULING AFTER PRELIMINARY HEARING
## ON MOTION FOR RELIEF FROM STAY

### I.    INTRODUCTION

Before the Court is the Motion for Relief from Stay ("Motion") filed by senior mortgagee, Chelsea Groton Bank ("Movant") and joined by MMP Holdings, LLC (ECF No. 35), the second mortgagee. The Court held hearings on the Motion on July 7 and 18, 2022. The Movant seeks stay relief to proceed against non-debtor real property operated as a bed and breakfast inn and located at 15 Elm Street, Groton, Connecticut (the "Spicer Mansion" or "Property"), that is owned by the Debtor in an LLC[1] ("LLC" or "Gates Realty Holdings, LLC"), and to otherwise prosecute its pending Superior Court foreclosure action[2] against that LLC and others, including the Debtor, Brian Gates, who as co-obligor on the Mortgage Notes, has been

---

[1] The Debtor allegedly holds a 100% membership interest in Gates Realty Holding, LLC, an entity that owns the real property at 15 Elm Street, and a 100% membership interest in Spicer Management, LLC, a separate entity that owns and operates the hotel/restaurant known as Spicer Mansion.
[2] *See Chelsea Groton Bank v. Gates Realty Holdings, LLC et al.*, Docket No. KNL-CV-19-6043532-S.

named as a co-defendant. Although the LLC has not filed for bankruptcy relief, the Superior Court has effectively stayed the foreclosure proceeding either as a cautionary matter and/or merely because the Debtor is a named party.

In the foreclosure case, and in connection with a Joint Motion for Stipulated Judgment of Foreclosure by Sale ("Stipulated Judgment"), the Superior Court entered a judgment in accordance with that stipulation and ordered a foreclosure by sale, finding the approximate debt of the Movant to be $1,795,000 as of May 15, 2021, and the fair market value of the Property as $3,670,000.00, based upon an appraisal obtained by the Movant in that proceeding.[3] That judgment ultimately resulted in a foreclosure auction on March 12, 2022, where, after 5 rounds of competitive bidding, the Superior Court confirmed a sale for $3,520,000 to the highest bidder, Ross Weingarten, and executed the relevant committee deed on March 31, 2022. That bidder subsequently failed to close the sale transaction and the issue of whether the sale deposit of $367,000.00 will be forfeited is currently in dispute and on appeal.

The Debtor filed this Chapter 11 case, in his individual capacity on May 20, 2022, to, in part, avert a new foreclosure auction in the state court proceedings scheduled for June 25, 2022, and to pursue alternate paths to reorganize or sell Spicer Mansion. Importantly, in connection with the Stipulated Judgment, the Debtor, on November 18, 2021, also stipulated that he, along with the other co-defendants, agreed, "[t]o the extent that any Defendants file for federal bankruptcy protection, the Defendants hereby agree to stipulate to immediate relief from any

---

[3] The parties also stipulated to a judgment of foreclosure by sale entering as to four additional properties, including the Debtor's primary residence, at dates subsequent to the foreclosure sale of the Property. The parties agreed, however, that "[t]o the extent that the proceeds of the sale of the [Property] are sufficient to satisfy the debts of all creditors having an interest in that [P]roperty, the parties hereby agree to forego the sales of the remaining properties and take all necessary actions to cancel such sales." The aggregate value of these four additional properties provides an additional $1.765 million of collateral for lenders' loans and a further adequate protection hedge, as does the potentially forfeited $367,000 foreclosure sale deposit.

2

otherwise applicable bankruptcy stay to effectuate the terms of this agreement" (the "Stay Relief Stipulation").

The Motion asserts grounds for relief under 11 U.S.C. §§ 362(d)(1) and (d)(2). In connection with its reliance on Section 362(d)(1), the Movant urges this Court's enforcement of the pre-petition Stay Relief Stipulation, and a determination that the standards articulated in *In re Sonnax Indus., Inc.,* 907 F.2d 1280 (2d Cir. 1990) have been satisfied so that the foreclosure proceedings against the Debtor, as co-defendant, should be allowed to proceed to conclusion. Also central to the Movant's arguments is the fundamental contention that the LLC is not a debtor that is protected by the automatic stay and that the Section 362(d)(2) standards for relief have also been satisfied with regard to the Debtor's property interest in the LLC.

In response, the Debtor vigorously asserts that the efforts to reorganize Spicer Mansion are central to his individual prospects of reorganizing in the instant Chapter 11 case, that the Mansion presents an attractive market opportunity for a sale or refinancing, and that the Debtor deserves a reasonable opportunity to achieve those objectives for the benefit of all creditors and the Chapter 11 estate. At this juncture, the Debtor has not contended that the LLC or the Property are under the umbrella of the automatic stay. In furtherance of the request that this Court deny the Motion in this preliminary ruling, the Debtor has offered up adequate protection (*see* ECF No. 44) to the secured mortgage lenders on the Property, consisting of proposed monthly payments to both Chelsea Groton Bank and MMP Holdings in the amount of $10,000, and an additional monthly payment of $1,000 to secured creditor Timothy Owens, who holds a junior mortgage on the Property.

These amounts are allegedly based upon non-default contractual interest that would otherwise be due to these lenders. This offer would be effective on the 21st of July and each

3

subsequent month until modified by agreement or Order of this Court. While the lenders claim such amounts may be insufficient, the Court was presented with no contrary documentation, admissible evidence, or calculations of debt, interest accruals, accrued legal fees or proof of the diminishing value of the Property to rebut this ostensibly reasonable initial offer of adequate protection of the Debtor intended to address or mitigate the potential harm occasioned merely with the passage of time in the Chapter 11 process.

The Debtor asserts, without rebuttal, that his substantive sale and refinancing efforts are in process, that Spicer Mansion is performing favorably during this time—its peak season near the Mystic, CT seashore—and that its previous paths, while lacking in closure, did not lack earnest effort and may have been negatively impacted over the past two years by the ever-present Covid-19 dynamics.[4]

## II. CONCLUSIONS OF LAW FROM PRELIMINARY HEARING

### a. Cause under 11 U.S.C. § 362(d)(1)

After a review of the record of these proceedings and judicial notice of the dockets in the Superior Court proceedings captioned *Chelsea Groton Bank v. Gates Realty Holdings, LLC*,[5] *MMP Holdings, LLC v. Gates Realty Holdings, LLC*,[6] and *Timothy Owens v. Gates Realty Holdings, LLC*,[7] and at this early stage of the Chapter 11 case, this Court declines to find that the Movant has demonstrated good and sufficient cause to modify or terminate the automatic stay in satisfaction of its burden of proof. More particularly, while supportive of the Movant's contention of cause, this Court cannot, and will not, conclude that the Stay Relief Stipulation is

---

[4] It remains to be seen whether previous efforts failed or were frustrated by legal disputes with the Town of Groton over the zoning and operational licensing of the Spicer Mansion. Judicial Notice of those proceedings reveals an adverse judgment against the Debtor, the pendency of contempt proceedings and the possibility of severe restrictions upon the business of Spicer Mansion.
[5] Docket No. KNL-CV-19-6043532-S.
[6] Docket No. KNL-CV-19-6042702-S.
[7] Docket No. KNL-CV-19-5020557-S.

automatically enforceable. *See In re Sonnax Indus. Inc.,* 907 F.2d at 1286 (stating that the decision of whether to lift the stay is left to the discretion of the bankruptcy judge); *see also In re Frye*, 320 B.R. 786, 790 (Bankr. D. Vt. 2005) ("Although pre-petition agreements waiving the protection afforded by the automatic stay are enforceable, such waivers are neither *per se* enforceable, nor self-executing."). A finding of cause to support the enforceability of the Stay Relief Stipulation turns on the Court's examination of the totality of the relevant facts and circumstances of the case.

Unlike the pre-petition period, in Chapter 11, where the Debtor has expanded responsibilities and duties, the Debtor, as a fiduciary to the Chapter 11 estate, and the Chapter 11 process are contemplated to serve the interests of all creditors. It is fundamentally unfair to those creditor constituents, who are not parties to the Stay Relief Stipulation, to determine the fate of the Chapter 11 process in its first few weeks based on the Debtor's pre-petition covenants in a foreclosure context. Although the Stay Relief Stipulation was undeniably supported by the patience and forbearance of mortgage lenders in that pre-petition period where restructuring efforts were unavailing, automatic enforcement would fail to adequately weigh and recognize not only the varied interests served in Chapter 11, but also that there are powerful procedural and substantive tools and opportunities in Chapter 11 afforded a Debtor, with experienced restructuring counsel, to pursue other restructuring or value-maximizing strategies. It is clear from the undisputed narratives advanced by all of the parties that the failure of prior restructuring avenues was not substantially of the Debtor's making. It is also clear to this Court that opportunities in the Connecticut real estate market remain more favorable to sellers than at any other time in the last decade.

To the extent that there is a material risk that a diminution in the value of the Property may take place in the next 60 days so as to imperil lenders' collateral, the relative strength of the Connecticut real estate and financial markets, and the prior multiple bids at the prior foreclosure auction, would suggest otherwise. As the alleged collective debt of the lenders (estimated by the parties to be approximately $3.5 million) might grow with non-payments during this case so as to also potentially imperil their collateral position: (1) the evidence of the Property values advanced in the foreclosure proceeding of between $3.6 and $3.8 million would suggest that an equity cushion exists to protect these lenders, and (2) the Debtor's offer of adequate protection (ECF No. 44), equivalent to a monthly payment of non-default contract interest on the 21st of each month, mitigates or eliminates that risk, unless and until the Court is shown otherwise.

> b.  The *Sonnax* Factors

While "cause" is not defined in the Bankruptcy Code and is thus determined on a case-by-case basis, the Second Circuit Court of Appeals has crafted a menu of factors for this Court to consider in weighing cause to allow the pending litigation to proceed against the Debtor, as a co-defendant. As delineated by the Movant, these factors include the following:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d at 1286 (citation omitted).

While several of these factors weigh in favor of stay relief (including numbers 1, 4, and perhaps 10 above), the balance of these factors is tipped decisively in favor of the Debtor and its Chapter 11 estate *at this time* because such relief would fatally derail and distract short-term reorganization efforts, prejudice the interests of unsecured creditors and the Debtor's bankruptcy estate, and inordinately harm the interests of these creditors and the Chapter 11 estate. Keeping the automatic stay in place for an additional period of 60 days (while providing for modest adequate protection payments) to facilitate the Debtor's earnest pursuit of reorganization goals serves the purposes of all constituents. Simply put, while the Superior Court has capably and effectively managed and advanced the foreclosure, those proceedings, if restarted now, would defeat the reasonable prospects for reorganization, potentially minimize the financial outcome for all creditors here and distract the Debtor from his remedial goals.

      c.   Equity and the necessity for reorganization under 11 U.S.C. § 362(d)(2)

Under Section 362(d)(2), the Movant bears the burden of demonstrating that there is no equity in the Property. Here again, the record before the Court, at this juncture, from the foreclosure judgment and foreclosure sale, indicates a potential equity cushion of approximately $250,000, plus additional collateral in four other properties. Insufficient additional evidence was presented to support any contrary conclusion.

Section 362(d)(2) also places the onus on the Movant to demonstrate that the Property is not necessary for an effective reorganization. Although the Movant endeavors to minimize the centrality of Spicer Mansion and its business to the Debtor's prospects for reorganization, the current record supports the conclusion that:

    1.   Spicer Mansion is an attractive, high-end luxury, ostensibly desirable property;

2.      Spicer Mansion is currently in its enhanced revenue/performance season;

3.      The Debtor's 100% membership interest in the LLCs that own and manage Spicer Mansion are the principal resources of value, cash flow and creditor recovery if the Debtor can effectuate a proposed refinancing or sale. There are no other material assets from which to fund the Debtor's Chapter 11 Plan;

4.      The historic levels of buyer interest in Spicer Mansion, its market attractiveness, and the Debtor's current discussions with buyers and other capital sources, present a reasonable prospect that a meaningful reorganization or an orderly arms-length, value-maximizing sale might be achievable in the near term;

5.      While there are also indicia of Plan infeasibility presented by the zoning, licensing and operational disputes between the Debtor, Spicer Mansion, and the Town of Groton,[8] the Court has been presented with no foundation upon which to weigh those effects. The Court's review of the docket of the pending proceedings on these disputes offers no probative conclusions on whether the Debtor might prevail or lose on these critical proceedings.

III.    CONCLUSIONS

Accordingly, the Court finds the current record is insufficient to support the Motion as a preliminary matter. Further, at this time, the Court concludes that it appears that the Debtor has a reasonable likelihood that it will prevail at the final hearing on the Motion, provided its proposed restructuring path is pursued, committed and realized.

The Court's conclusions in this Preliminary Ruling are without prejudice to the parties presenting further argument and a fuller evidentiary record to this Court at a final hearing on the Motion to be held on September 20, 2022, at 11:00 AM. A final pre-trial conference will be held

---

[8] The Court also takes judicial notice of the docket in the case captioned *Town of Groton v. Gates Realty Holdings, LLC et al.*, case no. KNL-CV-18-6037707-S.

by this Court on August 31, 2022 at 11:00 AM to address final trial preparations and submissions.

Accordingly, the automatic stay, to the extent applicable, shall remain in force and effect until the conclusion of the final hearing on the Motion and a determination under 11 U.S.C. § 362(d), or further order of this Court.

Notwithstanding the aforesaid, in the interests of conforming this Ruling to the record of these proceedings and the Debtor's assurances, the Court hereby conditions the continued force and effect of the automatic stay upon the following:

1. The Debtor's payment of the proffered adequate protection payments, in good funds, to the referenced mortgage lenders on or before the 21st of each month, commencing July 21, 2022;[9]

2. The prompt and timely filing (not later than 15 days hereof), upon the docket, of Monthly Operating Reports for the Debtor and comparable monthly financial operating statement for Spicer Mansion since the filing of the petition in this case;

3. The filing upon the docket, within 10 days hereof, of a current certificate of insurance for Spicer Mansion along with proof of payment of any premiums due; and,

4. The filing upon the docket, within 10 days hereof, of a sworn affidavit of the Debtor, with any supporting documents, substantiating the zoning, licensure and operational legitimacy of the hotel/restaurant business of Spicer Mansion.

5. In the event of noncompliance, upon further application, notice and expedited hearing, stay relief may be summarily granted under 11 U.S.C. § 362(d)(1).

**IT IS SO ORDERED** at Hartford, Connecticut this 21st day of July 2022.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[9] As this Ruling issued on July 21, 2022, the Debtor may also comply by otherwise wiring such funds to the lenders' designee by 5:00 PM EST on July 22, 2022.