UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | |
|---|---|
| IN RE | CASE NO. 22-20337 (JJT) |
| BRIAN P. GATES | CHAPTER 7 |
| DEBTOR(S) | December 23, 2022 |

MOTION FOR ENTRY OF AN ORDER TO COMPEL DEBTOR
TO TURNOVER PROPERTY OF THE ESTATE AND RELATED RELIEF
PURSUANT TO 11 U.S.C. §§542 AND 543

To the Honorable James J. Tancredi, United States Bankruptcy Judge:

The Motion of Bonnie C. Mangan Chapter 7 Trustee respectfully represents:

1. This is the Trustee's Motion for Compel Turnover pursuant to 11 U.S.C. §§542 and 543.

2. The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. Section 1334(b) and 28 U.S.C. §157(b)(2)(A)and(E).

3. Venue is proper pursuant to 28 U.S.C. §1408.

4. On May 20, 2022 Brian P. Gates, ("Debtor"), commenced a voluntary Chapter 11 Subchapter V bankruptcy proceeding.

5. On October 27, 2022 the case was converted to a case under Chapter 7, and on November 2, 2022, the undersigned was appointed as the successor Chapter 7 Trustee (ECF No. 102 and ECF No. 110).

6. On the Debtor's bankruptcy schedules he disclosed his one hundred percent (100%) interest in the following single member Connecticut Limited Liability Companies:  Front Street Commons, LLC, Gates Realty

1

Holdings, LLC, Spicer Management, LLC, Swede, LLC and Bookwell Travel, LLC ("the LLCs)(ECF No. 1, Schedule A/B Page 18 of 58).

7. Pursuant to 11 U.S.C. §§541(a) and 541(c)(1)(A) the Debtor's interest in the LLCs became property of his bankruptcy estate and the Trustee succeeded to all of the Debtors rights, both economic and non-economic, in the LLCs including the right to control the single-member LLCs. *See In re B&M Land & Livestock, LLC* 498 B.R. 262, 267 (Bankr. D. Nev. 2013).

8. As of the petition date, Gates Realty Holdings, LLC owned real property located at 15 Elm Street, Mystic (Groton), Connecticut, also known as the Spicer Mansion Hotel ("Spicer Mansion").

9. Spicer Management, LLC is the operating entity of the Spicer Mansion.

10. As of the petition date the Debtor, Gates Realty Holdings, LLC, and Spicer Management, LLC were the named defendants, among others, in a foreclosure action that was pending in the Connecticut Superior Court, Judicial District of New London entitled *Chelsea Groton Bank v. Gates Realty Holdings, LLC* etal, Case No. KNL CV 19 6043532 S ("foreclosure action").

11. The foreclosure action was filed against three of the Debtor's properties[1], including the Spicer Mansion.

---

[1] 116 Cove Road, Stonington, Connecticut, and 32-34 Norwich Road, Plainfield, Connecticut were also named in separate counts of the Plaintiff's complaint.

12.     On November 23, 2021, the Superior Court (Young, J.) entered a stipulated judgment of foreclosure by sale regarding the Spicer Mansion with a sale date set for January 29, 2022 (Superior Court Docket Entry 139.0).

13.     Ultimately on October 22, 2022 after further complicated activity on the Superior Court docket, MMP Holdings, LLC executed a sales agreement with the appointed foreclosure committee for the purchase of the Spicer Mansion for $3,050,000.00.

14.     On November 21, 2022, the Superior Court approved MMP's motion to assign its bid to Captain's Mansion, LLC (Superior Court Docket Entry 200.01). Caption's Mansion was also granted an order to enforce possession of the Spicer Mansion (Superior Court Docket No. 201.01).

15.     Upon information and belief, once the sale of the Spicer Mansion is concluded, and the lien holders are paid in order of priority, the bankruptcy estate may benefit from a surplus of the proceeds.

16.     On or about December 17, 2022, the Debtor began holding an unauthorized "estate sale" at the Spicer Mansion. The Debtor invited the public to the Spicer Mansion to "[b]uy a piece of history from the over 10,000 square foot Mansion". A copy of the advertisement attached as Exhibit A.

17.     In the "estate sale" the Debtor represented that "everything was for sale" including flooring, marbles, fireplace mantles, staircases, toilets, sinks, doorknobs, the walkway, patio and landscaping, namely shrubs.

18. Neither the Trustee nor this Court authorized the alleged "estate sale". The Trustee alleges that said action by the Debtor violated 11 U.S.C. §§§ 362(a)(3);521(a)(3) and 521(a)(4)

19. The Trustee also believes that the Debtor' actions constitute trespass upon the Spicer Mansion because the removal of the fixtures, staircases, landscaping etc. from the real estate will cause irreparable harm to the real property and almost certainly result in a reduction of any surplus from the sales proceeds that would inure to the benefit of the bankruptcy estate.

20. On December 21, 2022 the undersigned sent an email to bankrutpcy counsel for Mr. Gates, Attorney George Tzepos, and counsel for Spicer Management, LLC, Attorney Richard Malafronte, making demand that all sale activity for the unauthorized "estate sale" cease, for an accounting of what was sold, and for the turnover of any proceeds of the sale along with the keys to the Spicer Mansion.

21. Attorney Malafronte and the Trustee spoke on December 21, 2022 and the Trustee was assured that all sales activity would cease and that she would receive an accounting of the items that were sold as soon as Attorney Malafronte could prepare it, and that the proceeds of the unauthorized sale would be sent to her.

22. At that time, Attorney Malafronte further represented to the Trustee that pursuant to a Court order entered on July 27, 2022 by Judge Goodrow, the Debtor was required to reside at the Spicer Mansion because of zoning ordinances. Judge Goodrow's opinion is attached as <u>Exhibit B</u>.

4

23. Notwithstanding, the Debtor represented a different address as his primary residence on his bankruptcy petition.

24. On December 23, 2022, Michael Knudsen of the Hamilton Group, LLC went to the Spicer Mansion at the request of the Trustee and took photos of the interior. Due to the size of the file, a copy of the record made by Mr. Knudsen can be found at:

https://www.dropbox.com/scl/fo/xzydj7k2ev4dl65pupmtp/h?dl=0&rlkey=4hg5u12ze2n4jg4coe3mwas3k.

25. Upon information and belief, based on information contained in an email message dated December 23, 2022 from Attorney Brian Wheelin, counsel for Captain's Mansion, LLC, to the undersigned and Attorney Brian Rich, counsel for Chelsea Groton Bank, the Debtor continues to remove items from the Spicer Mansion despite representations to the contrary.

WHEREFORE, The Trustee seeks an order from this Court:

(A) Directing the Debtor to cease removing any items from the Spicer Mansion and ordering him to return any items that have been removed by him;

(B) Compelling the turnover of an accounting for the items that were sold at the unauthorized estate sale;

(C) Compelling the Debtor and/or his counsel to turn over any and all of the proceeds received from the unauthorized sale to the Trustee;

(D) Enjoining the Debtor from transferring any of the items that were allegedly sold at the estate sale to putative purchasers that have not

been removed from the Spicer Mansion and to return any deposits or payments to the putative purchasers of those items;

(E)    Enjoining the Debtor from engaging in any further activity in connection with the operation of any of the single member LLC's that were disclosed on his bankruptcy schedules, including but not limited to interfering with the order of possession relative to the Spicer Mansion;

(F)    A determination of the Debtor's right to occupy the Spicer Mansion;

(G)    An order pursuant to 11 U.S.C. §506(c) to recover the bankruptcy estates necessary expenses related to preserving the collateral in connection with seeking this relief; and

(H)    Any further relief at the Court may deem appropriate.

Dated at South Windsor, Connecticut this 23rd day of December, 2022

BONNIE C. MANGAN, CHAPTER 7
TRUSTEE FOR THE ESTATE OF BRIAN P. GATES

_/s/Bonnie C. Mangan
Attorney Bonnie C. Mangan
CT 03759
The Law Office of Bonnie C. Mangan, P.C.
Westview Office Park
1050 Sullivan Avenue, Suite A3
South Windsor, CT 06074
(860) 644-4204 phone
(860) 644-4934 fax
bonnie.mangan@manganlaw.com

CL  rhode island          for sale                                post | account
                          garage & moving sales

favorite    hide    flag    share                                    Exhibit A

Posted 7 days ago on: 2022-12-16 12:15

Contact Information:

# Estate Sale Spicer Mansion Hotel (Mystic)



15 Elm Street near Library Street

start time: 8 AM  dates
                  saturday 2022-12-17
                  sunday 2022-12-18

Spicer Mansion Boutique Hotel and Restaurant is permanently closed, everything must go.
Hotel: King-size beds, Duxiana mattresses, linens, end tables, lamps, chandeliers, curtains, dressers, couches, curio cabinets, T.V's, and more.
Restaurant: Kitchen Equipment: Stoves, ovens, fryolator, racks, shelving, salamander, Ice Machine, bakers racks, True refrigeration units, stainless countertops, stand mixers, robo-coupe, Vitamix blender, slicer
Restaurant Tables, Chairs, tablecloths, Bernardaud fine china, Christofle silverware, glassware, serving platters, barware, glassware, etc....

QR Code Link to This Post



Exhibit B                                                          **FILED**

JUL 27 2022

SUPERIOR COURT - NEW LONDON
DOCKET NO. KNL-CV18-6037707         : SUPERIOR COURT AT NEW LONDON

TOWN OF GROTON                      : JUDICIAL DISTRICT OF NEW LONDON

VS.                                 : AT NEW LONDON

GATES REALTY HOLDINGS, LLC          :
AND BRIAN GATES                     : JULY 27, 2022

MEMORANDUM OF DECISION RE
PLAINTIFF'S MOTION FOR CONTEMPT (#126)
AND PLAINTIFF'S SUPPLEMENTAL MOTION FOR CONTEMPT (#131)

1. Procedural History:

This case went to judgment on November 18, 2020, when the Court granted the Plaintiff's Corrected Motion for Judgment (#123). This matter comes before the Court on the Plaintiff's Motion for Contempt (#126) and Plaintiff's Supplemental Motion for Contempt (#131). Defendant filed an Objection (#133) to the motions. For the reasons herein stated, the Plaintiff's Motions for Contempt are granted, and the Defendant's Objection is overruled. The motions for contempt allege violations by the defendant, Gates Realty Holdings, LLC. The plaintiff, in its Corrected Motion for Judgment (#123), withdrew the action against the individual defendant, Brian Gates.

The Court held a remote hearing on May 10, 2022, May 31, 2022, and June 2, 2022 on Motions #126 and #131. The parties were each represented by counsel, and each party presented evidence. The Court found generally more credible the evidence presented by the plaintiff than the evidence presented by the defendant. The Court has considered the evidence, the testimony of the witnesses, the arguments and briefs of counsel, and the applicable law. The Court finds by clear and convincing evidence that the defendant violated the clear and

1

unambiguous orders of the Court (Jongbloed, J.) dated November 18, 2020 (#123.02), and that said violation was willful.

II. <u>Factual Findings and Discussion</u>:

The facts set forth herein are non-inclusive and are found by clear and convincing evidence. The Court generally credits the testimony and evidence presented by the plaintiff, including that of Thomas Zanarini, the Code Enforcement Officer for the Town of Groton. The witness and his wife dined at the restaurant at the Spicer Mansion on June 27, 2021, although they were not guests of the Mansion. On July 1, 2021, Mr. Zanarini wrote a letter to Brian Gates, notifying Mr. Gates of alleged violations of the court's November 18, 2020 orders.

The Court credits Mr. Zanarini's testimony that the only violation of the Court's November 18, 2020 orders since the notice dated July 1, 2021 related to the advertisements of the restaurant as open to the general public, and not limited to guests. Plaintiff's Exhibit 7 ("New England's Most Buzzed About Cocktail Lounge") invites the public to "Make a Reservation" with a phone number, and is not limited to guests. Moreover, the same exhibit invites the public "[f]or parties larger than six, please contact the Mansion directly for arrangements." Also, the defendant advertised the restaurant for Easter brunch on April 2, 2022 and said advertisement would reasonably be interpreted as open to the public and not limited to Spicer Mansion guests. The article by journalist Linda Laban does not support a finding of contempt regarding the restaurant being open to the public. When Ms. Laban dined at the restaurant, she was a guest of the Mansion. The Court has not considered the evidence regarding Ms. Laban in its findings of contempt.

The Court finds credible the testimony of the witness Allison Dearie regarding her photography of a wedding at the Mansion on April 11, 2021. Ms. Dearie photographed a wedding at the Spicer Mansion that consisted of approximately 20 – 25 guests. The Court found generally credible the testimony of Emily Norwood, and specifically regarding the use of the Speakeasy for purposes other than storage, as well as the restaurant being available to the public and the fact that she did not observe during her employment any owner occupation by the manager of the Spicer Mansion. She testified credibly that employees sometimes stayed at the Mansion for periods of time, but not consistently.

The Court credits the testimony of Kelly Zrenda regarding her wedding held at the Spicer Mansion on October 21, 2021, that the wedding took place at the Mansion and was attended by approximately fifty guests. Ms. Zrenda utilized an events planner employed by the Mansion to schedule and prepare for the wedding. All guestrooms at the Mansion were rented for the wedding. There were complaints about the wedding and the police were ultimately called as a result of a noise complaint.

The Court credits the testimony of Sierra Ko regarding her wedding at the Spicer Mansion on June 27, 2021. The night before the wedding, she and her guests had a small party in the Speakeasy at the Mansion. Approximately twenty-five guests attended the wedding. The event coordinator employed at the Mansion assisted Ms. Ko and her husband with wedding arrangements. The only guests who stayed at the Mansion were those associated with the wedding. Ms. Ko had no contact with Brian Gates.

The testimony of Christopher Calkin, the Deputy Fire Marshal, was credible regarding the fact that during his inspections, he did not observe living quarters for the Mansion manager. However, said testimony was insufficient to substantiate a finding of contempt and was not considered by the Court in its findings of contempt. Diane Trone's testimony was credible, but also insufficient to base a finding of contempt, and was not considered by the Court in its contempt findings.

Brian Gates is an agent of the defendant, Gates Realty Holdings, LLC, and manager of the Spicer Mansion, the subject property. The Court credited some, but not all, of the testimony of Mr. Gates. Mr. Gates resides at 116 Cove Road in Stonington, Connecticut. The Court does not credit the testimony of Mr. Gates that he spent more time at the Spicer Mansion than at his residence. Brian Gates did not "owner occupy" the Spicer Mansion, nor did any other agent, membership owners or managers of the defendant. The Court does not credit Mr. Gates' testimony that he understood that the Court's orders of November 18, 2020 applied only to large weddings, large events or large parties. The Court does not credit Mr. Gates' testimony that, in essence, he was unaware that members of the public were allowed to dine at the restaurant without being guests.

The Court's order #25i from its 11/18/2020 orders states in relevant part that the "Town of Groton shall notify the Defendant in writing of each violation of this Judgment and provide the Defendant with no less than ten (10) days from the date of her receipt of said notice to cure the violation. If the Defendant fails to cure the violation within the time provided by the Judgment . . . the Plaintiff or the officer, agent or representative, or the Town of Groton, may

4

immediately seek any available legal/equitable remedy to enforce this Judgment, including without limitation by filing a motion for contempt, and shall need not issue a notice of violation and/or a cease and desist order prior to doing so. . . ." The Court rejects the defendant's argument that the plaintiff's motions for contempt should be denied because the plaintiff failed to comply with order #25i. The plaintiff did comply with the order by providing notice to the defendant dated July 1, 2021 and filing Motion for Contempt #126 on July 23, 2021 and Supplemental Motion for Contempt #131 on April 1, 2022.

The standard of proof for an indirect civil contempt proceeding is clear and convincing evidence. *Brody v. Brody*, 315 Conn. 300, 316 (2015). "'[C]ontempts may be characterized as civil or as criminal. . . . Contempts of court may also be classified as either direct or indirect, the test being whether the contempt is offered within or outside the presence of the court. . . . A refusal to comply with an injunctive decree is an indirect contempt of court because it occurs outside the presence of the trial court.'" *Brody v. Brody*, 315 Conn. at 316-317, quoting *Cologne v. Westfarms Associates*, 197 Conn. 141, 149-150 (1985) (citations omitted; footnote omitted; internal quotation marks omitted).

"The court has an array of tools available to it to enforce its orders, the most prominent being its contempt power. . . . Civil contempt . . . is not punitive in nature but intended to coerce future compliance with a court order, and the contemnor should be able to obtain release from the sanction imposed by the court by compliance with the judicial decree. . . . A civil contempt finding thus permits the court to coerce compliance by imposing a conditional penalty, often in the form of a fine or period of imprisonment, to be lifted if the noncompliant

5

party chooses to obey the court. . . . To impose contempt penalties . . . the trial court must make a contempt finding, and this requires the court to find that the offending party willfully violated the court's order; failure to comply with an order, alone, will not support a finding of contempt. . . . [T]he trial court's continuing jurisdiction to effectuate prior judgments . . . is not separate from, but rather, derives from, its equitable authority to vindicate judgments. . . . [S]uch equitable authority does not derive from the trial court's contempt power, but, rather, from its inherent powers." *Town of Newtown v. Gaydosh, et al.*, 211 Conn. App. 186, 199-205 (2022) (citations omitted; internal quotation marks omitted).

The orders of the Court were clear and unambiguous. The Court rejects the defendant's argument that the orders were unclear or ambiguous, and that the order that "[t]he defendant immediately shall cease and desist from using the Property or any portion thereof as a facility for events, including, but not limited to, weddings, parties and [fundraisers]" is unclear or ambiguous. The fact that Mr. Gates testified that he *understood* the order to apply only to large events does not transform the clear and unambiguous nature of the order. The defendant willfully violated the Court's orders by clear and convincing evidence as follows:

1. Order #25a: The defendant advertised and used the property as a restaurant open to the public, not limited to guests of the Spicer Mansion.

2. Order #25c: The defendant used the Speakeasy for a purpose other than storage in that defendant allowed guests to consume alcohol in the Speakeasy.

6

3. Order #25d: The defendant used the property or portions thereof as a facility for events, including but not limited to weddings, parties and fundraisers in that the defendant allowed guests to conduct their weddings at the property.

4. Order #25e: The defendant failed to have one of its limited liability co-membership owners or its manager occupy the property in compliance with Special Permit #228 in that neither the property's manager, Brian Gates, nor any co-membership owner occupied the property as "owner occupied."

III. <u>Orders</u>:

1. Motion for Contempt #126 and Supplemental Motion for Contempt #131 are granted.

2. Defendant shall file with the Court by August 5, 2022 a completed and signed financial affidavit.

3. Caseflow shall schedule a one-hour in-person hearing regarding sanctions to be imposed resulting from the contempt findings. The parties shall be prepared to address with the Court what, if any, impact the pending bankruptcy action filed by Brian Gates may have on the Court's authority to enter financial sanctions against the defendant.

BY THE COURT,

/s/ 434439
Goodrow, J.

7

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

IN RE                                            CASE NO. 22-20337 (JJT)

BRIAN P. GATES                      CHAPTER 7

     DEBTOR(S)

<u>ORDER RE: MOTION FOR ENTRY OF AN ORDER TO COMPEL
TURNOVER PURSUANT TO 11 U.S.C. §§542 AND 543
AND OTHER RELIEF</u>

Upon the Motion for Entry of an Order of Attorney Bonnie C. Mangan, Chapter 7 Trustee to Compel the Debtor to turnover property of the estate pursuant to 11 U.S.C. §§542 and 543, dated December 23, 2022, ("Motion") and other relief requested as set forth in the Motion, and the Court being satisfied that the relief requested is in the best interest of the bankruptcy estate:

IT IS HEREBY ORDERED that pursuant to Section 105(a), the Motion is GRANTED and the Debtor, Brian P. Gates, is hereby ORDERED TO;

    (A)    Cease removing any items from the Spicer Mansion and return any items that have been removed to the Trustee;

    (B)    Provide an accounting for the items that were sold at the unauthorized estate sale to the Trustee by _____;

    (C)    Turn over the proceeds received from the unauthorized sale to the Trustee by_____;

    (D)    Cease transferring any of the items that were allegedly sold at the estate sale to putative purchasers that have not been removed from the

7

Spicer Mansion and to return any deposits or payments to the putative purchasers of those items;

(E)     Cease engaging in any further activity in connection with the operation of any of the single member LLC's that were disclosed on his bankruptcy schedules, including but not limited to interfering with the order of possession relative to the Spicer Mansion;

(F)     The Debtor does/does not have the right to occupy the Spicer Mansion;

(G)     That the bankruptcy estate is allowed an order pursuant to 11 U.S.C. §506(c) to recover the bankruptcy estates necessary expenses related to preserving the collateral in connection with seeking this relief

8